AO 91 (Rev. 11/11) Criminal Complaint

**FILED**

VANESSA L. ARMSTRONG, CLERK

# UNITED STATES DISTRICT COURT
for the
## WESTERN DISTRICT OF KENTUCKY

OCT 0 6 2016

**U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) |
| | ) |
| JEFFREY DESMOND CARTER | ) |
| *Defendant* | |

Case No. 5:16 mj-145

## CRIMINAL COMPLAINT

I, F.B.I. Special Agent Virginia MacHenry, the complainant in this case, state the following is true to the best of my knowledge and belief.

On or about the dates of [see attachment A] in the counties of Calloway, Marshall, and elsewhere in the Western District of Kentucky, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|

**See Attachment A, incorporated as if set forth fully herein**

This criminal complaint is based on these facts:

**See attached Affidavit**

XX❑    Continued on the attached sheet

_____
*Special Agent Virginia MacHenry,*
*Federal Bureau of Investigation*

*Sworn to before me and signed in my presence.*

Date:  October 6, 2016

_____
*Colin H. Lindsay,*
*United States Magistrate Judge*

City and State: Louisville, Kentucky

*(AUSA initials)*

ATTACHMENT A TO CRIMINAL COMPLAINT; JEFFREY DESMOND CARTER

| VICTIM | DATE "On or About" | COUNTY | CODE SECTION | OFFENSE DESCRIPTION |
|---|---|---|---|---|
| 1 | January 11, 2015 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |
| 2 | June 19 and 20, 2013 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |
| 2 | October 16, 2013 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |
| 2 | September 6, 2014 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |
| 3 | March 6, 2013 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |
| 3 | May 3, 2013 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |
| 3 | June 19 and 20, 2013 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |
| 3 | September 10, 2013 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |
| 3 | September 17 through September 20, 2013 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography . |
| 3 | October 22, 2013 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |
| 4 | June 19 and 20, 2013 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |
| 5 | November 30, 2014 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |
| 6 | February 1 through February 28, 2013 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |
| 6 | November 4 through November 29, 2014 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |
| 6 | December 10 through December 13, 2014 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |
| 7 | July 24, 2014 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |
| 7 | November 24 and November 25, 2014 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |
| 8 | July 22, 2014 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |
| 9 | July 21 through July 31, 2013 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |
| 9 | August 19 through August 31, 2013 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |

ATTACHMENT A TO CRIMINAL COMPLAINT; JEFFREY DESMOND CARTER

| 9 | September 25, 2013 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |
|---|---|---|---|---|
| 9 | December 5, 2013 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |
| 10 | October 26, 2013 | Calloway County, KY | 18 U.S.C. §§2252A(a)(2)(B) and (b)(1) | Receipt of Child Pornography |
| 11 | December 16, 2014 | Calloway County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |
| 12 | June 28, 2013 | Marshall County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |
| 12 | June 28, 2013 | Marshall County, KY | 18 U.S.C. § 1591(a) | Sex Trafficking |
| 12 | September 15, 2013 | Marshall County, KY | 18 U.S.C. §§ 2251(a) and 2251(e) | Production of Child Pornography |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Virginia MacHenry, having been first duly sworn, do hereby depose and state as follows:

## INTRODUCTION

1.  I have been employed as a Special Agent of the FBI since February 2013, and am currently assigned to the Louisville Division, Bowling Green Resident Agency. While employed by the FBI, I have investigated federal criminal violations related to high technology or cyber-crime, child exploitation, and child pornography. I have gained experience through various trainings, conferences, and everyday work relating to conducting these types of investigations. I have received training in the areas of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined pursuant to 18 U.S.C. § 2256) in all forms of media including computer media. I have investigated child pornography/exploitation cases for the last 2 years.

2.  I have not included each and every fact known to me concerning this investigation. I have set forth only those facts I believe are necessary to establish probable cause to believe that Jeffrey Desmond Carter engaged in criminal acts in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1), 18 U.S.C. §§ 2251(a) and (e), and 18 U.S.C. §1591(a).

3.  The statements contained in this affidavit are based in part on: information provided by FBI Special Agents; written reports about this and other investigations I have received directly or indirectly from other law enforcement agents; information gathered from the service of subpoenas; information and physical objects obtained during the execution of search warrants; physical and electronic surveillance conducted by law enforcement

agents; independent investigation and analysis by FBI agents/analysts and computer forensic professionals; interviews, conducted by both FBI Special Agents and other law enforcement agents, with witnesses and/or victims; and my experience, training and background as a Special Agent with the FBI. Because this affidavit is being submitted for the limited purpose of securing authorization for the requested criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts I believe are necessary to establish probable cause for the requested warrant.

4.   The images, photographs, videos, pictures, etc. discussed herein meet (except where otherwise noted) the definitions for: "visual depiction," as defined in 18 U.S.C. § 2256(5); "sexually explicit conduct," as defined in 18 U.S.C. § 2256(2)(A); and "child pornography," as defined in 18 U.S.C. § 2256(8)(A).

5.   Affiant is aware that the definition of "producing," as that term is used in 18 U.S.C. §2251(a), is found at 18 U.S.C. §2256(3).   Producing "means producing, directing, manufacturing, issuing, publishing, or advertising."   Further, Affiant is aware of the decision in *United States v. Foley*, 740 F.3d 1079 (7th Cir. 2014).   In *Foley*, the Seventh Circuit found that the storage of visual images for later retrieval is part of the process of "producing."   *Id.* at 1083.   See also *United States v. Wright*, 774 F.3d 1085, 1091-1092 (6th Cir. 2014) (The "producing" element of 18 U.S.C. §2251(a) (defined in 18 U.S.C. §2256(3)) is defined broadly and non-technically.)

6.    Affiant, through investigation, witness and victim interviews, and information provided by other law enforcement personnel, is aware of the identity and date of birth for all victims referenced below.  Each victim has been assigned a number by which she is referenced in this Affidavit.

7.    Affiant has shown the reviewing Magistrate a representative sample of the photographs, images, and still frame images taken from the videos referenced below for each victim and incident date.  These images will be maintained in a secure manner by Affiant.

## BACKGROUND AND INITIAL INVESTIGATION

8.    On February 6, 2015, the Murray Police Department was notified that Victim 1, a 14 year old female, had reported sending sexually explicit photos and videos of herself to the user of the Facebook[1] profile identified as Adam Bryan. Victim 1 was first contacted by Adam Bryan in December of 2014 via Facebook messenger[2].  Victim 1 reported that messages from Adam Bryan's account asked her if she wanted to make some money. Adam Bryan told her he would pay her if she would send sexually explicit pictures.

---

[1] Facebook is a US-based social networking website originally developed for college students but then later expanded to anyone who is 13 years and older. A user must register with an email address and create a personal profile. Users can add other users as friends, exchange messages, receive automatic notifications and categorize their friends list.

[2] Facebook Messenger is an instant messaging service and software application that provides text and voice communication. Integrated with Facebook's web-based chat feature and built on the open MQ Telemetry Transport (MQTT) messaging protocol, it lets Facebook users chat with friends on both the mobile application and the main website.

Victim 1 agreed and sent approximately 10 digital photographs in addition to a video. These photographs and video depicted the victim's naked breasts and vagina. Victim 1 also Face timed[3] with the person who was using a face time account under the name jdcarter@icloud.com. Through the course of the investigation, law enforcement was able to determine the Facebook address of the suspect was https://www.facebook.com/adam.bryan.31. Through Kentucky driver's license checks, investigators were able to determine that a Jeffrey D. Carter resided at 1705 Miller Avenue in Murray, Kentucky.

9.      A search warrant on https://www.facebook.com/adam.bryan.31 revealed that multiple IP addresses were being used; including 72.14.108.33, a local address confirmed by Murray Electric System. A search warrant for IP address 72.14.108.33 from Murray Electric System revealed that the IP address was then in use by Jeffrey Carter at 1705 Miller Avenue in Murray, Kentucky. The search warrant for the Facebook account (referenced above) also produced thousands of pages of Facebook messenger conversations between Adam Bryan (subsequently identified as Jeffrey Carter) and others.

10.     On February 10, 2015, law enforcement officials executed a Search Warrant at Carter's residence at 1705 Miller Avenue, Murray, Calloway County, Kentucky 42071. During the search of the residence, law enforcement officials seized a black Asus Laptop, a black and red SanDisk USB Drive 8GB, a black iPhone, a Samsung SM-T217A Galaxy cell

---

[3] FaceTime is an Apple video telephone/video chat service somewhat similar to Skype and Google Hangouts that makes it possible to conduct one-on-one video calls between newer Apple Iphone, Ipad, Ipod Touch and Mac Notebooks and desktops.

phone/tablet, and a Samsung GSM SGH i337 Galaxy S4 cell phone. The above-referenced items (hereinafter collectively referred to as the "computer and devices") were submitted as evidence and subjected to forensic examination. Affiant knows from independent research that no computers and devices, including the computer and devices listed herein, are manufactured in Kentucky.

11.    During the search, Carter was detained and transported to the Murray Police Department where he was notified of his Miranda rights, and signed a written waiver of those rights. During the course of the interview, Carter admitted to requesting pornographic material from multiple girls under the age of 18. Carter further admitted to meeting with some of the girls and having a sexual relationship with them. Carter then named several girls with whom he would meet for sexual acts in exchange for money. Those girls have since been identified by investigators.

## VICTIM 1

12.    On February 12, 2015, a forensic interview was conducted at the Purchase Area Sexual Assault and Child Advocacy Center with Victim 1. During the interview, Victim 1 stated that she had sent a number of photographs of herself by Facebook messenger to an account in the name of Adam Bryan, later determined by law enforcement to be Jeffrey Carter. Victim 1 stated that the photographs were sent after Carter requested them and had offered to pay money in exchange for the images. Victim 1 further stated she had also utilized Face Time with the subject, while engaging in sexually explicit conduct. At the time of the Face Time contact, the subject was using the email address of jdcarter@icloud.com.

5

13.    A review of the Facebook messenger communications between Carter (using the Adam Bryan Facebook account) and Victim 1 revealed that, on or about January 11, 2015, Carter requested "sexy" videos from her, stating that he had offered to pay other girls $45.00 per hour for naked Skype[4] or FaceTime conversations. Ultimately, Carter agreed to pay Victim 1 $200.00 for videos and pictures, so "long as all videos are naked." Further, Carter, when describing the requested videos, stated that Victim 1 "better be naughty as fuck and show [her] face too." Carter agreed to drop the money off at Victim 1's location, a residence/place of business in Benton, Marshall County, Kentucky.

14.    Carter, during the Facebook conversations, stated that he thought Victim 1 was 14 years old, which, eventually, Victim 1 confirmed. Carter stated that it was okay if she was young, and later he said, "I love young girls." While Victim 1 was sending the pictures and videos, Carter requested that she "let me see u rub pussy and suck fingers." Carter also requested that she say she was 14 years old in a video. Ultimately, Victim 1 sent Carter at least two pictures which showed her vagina, as well as numerous pictures of her breasts. Additionally, she sent approximately 7 videos to Carter, through Facebook messenger; those videos were not recovered in the forensic examination of the computer and devices.

## VICTIM 2

15.    On April 1, 2015, Victim 2 was interviewed at the Murray Police Department. During the interview Victim 2 stated that she met Jeffrey Carter in the summer of 2013, when she

---

[4] Skype is a US-based voice-over-IP service and instant messaging client.

was 13 years old, through a friend (Victim 3). Jeffrey Carter suggested that he, Victim 2, Victim 3, and Victim 4 have sex. The girls agreed and Victim 2, Victim 3, and Victim 4 masturbated Carter; additionally, Victim 4 engaged in sexual intercourse with Carter. Carter then threatened Victim 2 that he had a video of the encounter he would post on her Facebook page if Victim 2 did not send him nude photographs of herself. He also used the same threat to induce Victim 2 meet him for sexual acts on at least two other occasions. Carter recorded all the sexual encounters with Victim 2. Through a forensic review of the computer and devices seized during the search of Carter's residence, videos of Victim 2, engaged in various sexual acts with Jeffrey Carter, were located.

16.    Victim 2 is depicted in a series of videos recorded on or about September 6, 2014, when she was approximately 14 years of age. These videos were located during the forensic examination of the computer and devices seized from Carter's residence during the search warrant. These videos all appear to have been recorded at the defendant's residence in Calloway County, Kentucky, using a cellular phone, computer, or other device. In this series of approximately two videos, Victim 2 displays her breasts for Carter and the recording device while she masturbates Carter's penis and performs oral sex on Carter.

17.    Victim 2 is depicted in a series of videos recorded on or about October 16, 2013, when she was approximately 13 years of age. These videos were located during the forensic examination of the computer and devices seized from Carter's residence during the search warrant. These videos were recorded at the defendant's residence in Calloway County, Kentucky using a cellular phone, computer, or other device. In this series of

approximately three videos, Victim 2 displays her genitals and breasts for Carter and the recording device while she masturbates Carter's penis and performs oral sex on Carter. Carter also performs oral sex on Victim 2. Additionally, Victim 2 and Carter are depicted engaging in sexual intercourse (genital-genital).

## VICTIM 3

18.    Victim 3 is depicted in a series of four videos, recorded on or about March 6, 2013, located after forensic examination of the computer and devices seized from the defendant during the execution of the search warrant. These videos were recorded at Carter's residence in Calloway County, Kentucky using a cellular phone, computer or other device. The videos depict Victim 3 nude or partially nude while she masturbates Carter's penis with her hand. In at least one video, Carter masturbates while Victim 3 simulates oral sex on her finger. Victim 3 was approximately 14 years old when this video was recorded in March of 2013.

19.    Victim 3 is also depicted in a series of videos recorded on or about May 3, 2013, when she was approximately 14 or 15 years of age. These videos were located during the forensic examination of the computer and devices seized from Carter's residence during the search warrant. These videos all were recorded at the defendant's residence in Calloway County, Kentucky using a cellular phone, computer, or other device. In this series of approximately seven videos, Victim 3 displays her genitals, buttocks, and breasts for Carter and the recording device. Additionally, Victim 3 masturbates Carter's penis until he ejaculates. Throughout this series of videos, and in the time leading up to

8

and during the moment the defendant ejaculates, Victim 3 repeatedly states that she is 15 years of age. Victim 3 repeatedly stated her age at Carter's request. During the series of videos, Carter also offered Victim 3 $100.00 to engage in sexual intercourse with him.

20.     Victim 3 is also depicted in a series of videos recorded on or about September 10, 2013, when she was approximately 15 years of age. These videos were located during the forensic examination of the computer and devices seized from Carter's residence during the search warrant. These videos were recorded at the defendant's residence in Calloway County, Kentucky using a cellular phone, computer, or other device. In this series of approximately three videos, Victim 3 displays her genitals, buttocks, and breasts for Carter and the recording device. Additionally, Victim 3 masturbates Carter's penis, performs oral sex on him, and engages in sexual intercourse (genital to genital) with Carter. Throughout this series of videos, Victim 3 repeatedly states that she is 15 years of age. At Carter's request Victim 3 says "I love sucking your dick." He then asks her how old she is to which Victim 3 says, "15" Carter tells her to say it to the camera. Victim 3 repeatedly stated her age at Carter's request, saying "I'm 15 and I'm gonna be doing this a lot and I love jacking you off." Carter asks her how often and she replies "Anytime you want." Carter then asks Victim 3 if "you gonna be my little sex slave?"

21.     Victim 3 is depicted in a series of three videos, recorded on or about and between September 17, 2013 and September 20, 2013 located after forensic examination of the computer and devices seized from the defendant during the execution of the search warrant. These videos were recorded at Carter's residence in Calloway County, Kentucky, using a cellular phone, computer or other device. Victim 3 displays her

9

breasts for Carter and the recording device as she masturbates Carter's penis and preforms oral sex on Carter. Victim 3 was approximately 15 years old when these videos were recorded in September of 2013.

22.    Victim 3 is depicted in a series of five videos, recorded on or about October 22, 2013, located after forensic examination of the computers and devices seized from the defendant during the execution of the search warrant. These videos were recorded in the bathroom at the Victim's residence, using a cellular phone, computer or other device. The videos depict Victim 3 nude or partially nude while she masturbates, using her fingers and a hairbrush. In two of the videos she says the name "Jeff" as she masturbates. In another of the videos, she says "Daddy, I want you Daddy" while a hairbrush is inserted in her vagina. Victim 3 was approximately 15 years old when these videos were recorded in October of 2013.

### VICTIMS 2, 3, & 4

23.    As referenced in numbered paragraph 15, above, Victims 2, 3, and 4 also engaged in sexual acts with Carter simultaneously in a group sexual activity or "foursome." In a series of approximately 10 videos, recorded on or about June 19, 2013 and June 20, 2013, at Carter's residence in Calloway County, Kentucky, Victims 2, 3, and 4 are all depicted nude while they engage in various sexual acts with Carter. The videos depict, with regard to Victims 2, 3, and 4, the lascivious exhibition of their genitals. Further, these videos depict Victims 2, 3, and 4 masturbating Carter's penis. Additionally, Victim 4 and Carter are shown engaging in sexual intercourse (genital-genital). Carter filmed these

videos using a cellular phone, computer, or other devices. At the time of the recordings, Victim 2 was approximately 13 years of age, Victim 3 was approximately 15 years of age, and Victim 4 was approximately 15 or 16 years of age.

## VICTIM 5

24.    On February 1, 2016, a forensic interview was conducted at the Purchase Area Sexual Assault and Child Advocacy Center with Victim 5. During the interview, Victim 5 stated that she had sent a number of nude photographs and videos of herself by Snapchat[5] to an account in the name of Adam Bryan, later determined by law enforcement to be Jeffrey Carter. The photographs and video were taken in her bathroom and her bedroom at her residence in Calloway County, Kentucky. Victim 5 stated that the photographs and video were sent after Carter requested them through Facebook messenger and had offered to pay money. At the time, Victim 5 needed the money and agreed to send photographs. Carter never paid Victim 5 for the photos and she blocked him. Carter also asked Victim 5 if she could find him younger girls that would send pictures to him. Later, Carter told Victim 5 that he had seen her in person and knew who she was.

25.    A review of the Facebook messenger conversations between Carter and Victim 5 revealed that, on or about November 29, 2014, Victim 5 informed Carter that she was 15 years of age. On or about November 30, 2014, Carter asked Victim 5 to send him "sexy videos" in exchange for cash. When asked to clarify what he wanted in the videos, Carter responded by saying "Sexy shit. Bad girl. Lol." Later in the conversation, Carter

---

[5] Snapchat is a US-based photo messaging application that allows users to temporarily send video, photo and chat to a controlled list of recipients.

requested that the videos include "U maserbating [sp] and sucking hair brush" and "legs wide open." Further, Victim 5 and Carter exchanged Snapchat contact information/usernames, and she agreed to send the videos via Snapchat. While Victim 5 was sending the Snapchat videos, Carter told her to "Spread that ass for me too" and to "tell me [Carter] to Fuck ur 15 year old pussy."

26.    The forensic examination of a Samsung GSM SGH i337 Galaxy S4, IMSI 310410659701018, phone number 1-270-227-4545, seized during the February 10, 2015 search warrant at Carter's residence revealed approximately seventeen (17) videos of Victim 5. These videos, all apparently sent via Snapchat, appear to have been sent by Victim 5 and received by Carter on or about November 30, 2014. The videos depict Victim 5 masturbating, simulating oral sex by placing her fingers in her mouth, and fondling her breasts. Victim 5's genitals, specifically her vagina, are visible in the vast majority of the videos.

### VICTIM 6

27.    On May 18, 2015, a forensic interview was conducted at the Purchase Area Sexual Assault and Child Advocacy Center with Victim 6. During the interview, Victim 6 stated that she was first contacted by the user of a fake Facebook account during her freshman year of high school when she was 15. The user of the fake Facebook account was later determined to be Jeffrey Carter. Carter said that he had Hollister coupons and could get alcohol for Victim 6 if she sent nude pictures. Carter instructed Victim 6 to download Snapchat in order to send the photos. Victim 6 sent sexually explicit photos and a video

of herself to Carter in February of 2013 using text messaging and/or Snapchat. Carter asked Victim 6 to send pictures of her butt or videos of her touching herself. Carter also told Victim 6 to say his name, "Jeffrey" in the videos. When Victim 6 was a freshman in high school, Carter sent a video of himself masturbating to her. He also sent a photo through Snapchat of an army picture with his last name "Carter" visible on the depicted soldier's uniform. On two occasions Carter bought alcohol for Victim 6 and dropped it off in the mailbox at her residence as she watched. Victim 6 received money from Carter on three or four instances.

28. Forensic examination of the computer and devices seized from Carter's residence uncovered a series of approximately 10-15 videos sent by Victim 6 to Carter in or about and between February 1, 2013 to February 28, 2013. These videos depict a variety of sexually explicit conduct, including the following: exhibition of Victim 6's genitals; Victim 6 masturbating; Victim 6 inserting the handle of a hairbrush into her vagina; Victim 6 inserting what appears to be a Sharpie marker into her vagina; Victim 6 simulating oral sex by inserting a finger into her mouth; Victim 6 simulating masturbating a penis using a hairbrush; and Victim 6 simulating oral sex by placing the handle of a hairbrush into her mouth. The forensic examination also located videos from the same time period purportedly sent by Carter to Victim 6 in which he masturbates and states Victim 6's first name.

29. A forensic examination of the Samsung GSM SGH i337 Galaxy S4, IMSI 310410659701018, phone number 1-270-227-4545 seized from Carter's residence on February 10, 2015 revealed the presence of a number of additional videos sent,

13

apparently via Snapchat, from Victim 6 to Carter, including: one (1) video on or about November 4, 2014; approximately twenty-one (21) videos on or about November 5, 2014; approximately eleven (11) videos sent on November 29, 2014; approximately ten (10) videos sent on or about December 10, 2014; approximately thirteen (13) videos sent on or about December 12, 2014; and approximately two (2) videos sent on or about December 13, 2014. These videos generally depict Victim 6 nude, and many show her masturbating or otherwise displaying her genitals, including her vagina. At the time these videos were sent to Carter, Victim 6 would have been 17 years of age.

30. On another occasion, Carter created a Snapchat account with the name "fireball" and threatened to send out pictures of Victim 6 if she did not send more photos. She replied that he did not have any and he showed her some of her previous photos.

### VICTIM 7

31. On August 10, 2016, a forensic interview was conducted at the Purchase Area Sexual Assault and Child Advocacy Center with Victim 7. During the interview, Victim 7 stated that she had sent nude photographs of herself to multiple people. Those included past boyfriends and some other people. Victim 7 was contacted through Facebook by an account with the name of Adam Bryan, later determined to be Jeffrey Carter. Adam Bryan is described as approximately 25 to 30 years old from his Facebook picture. He offered Victim 7 five dollars per picture if she sent him nude photographs of herself. Victim 7 does not remember sending photographs to Adam Bryan or anyone by the name of Jeffrey Carter. Through forensic review of Carter's computer and devices, seized

14

during the search of his residence, photos of Victim 7 were recovered from Carter's computer and devices.

32.    Victim 7 was also contacted through Snapchat by username "Dirtwheeler54", later determined to be Jeffrey Carter, who requested nude photographs. "Dirtwheeler54" sent a clothed picture of himself and a picture of his penis with the caption "wanna trade." He then sent several photos of the wall and ceiling with multiple question marks as the caption. "Dirtwheeler54 is described as a white male, in his older 20's. Victim 7 does not remember sending any photos and she then blocked "Dirtwheeler54" on Snapchat.

33.    A review of the Facebook Messenger conversation logs between Victim 7 and Carter shows that the victim sent, at Carter's request, numerous sexually explicit photographs to Carter. In these conversations, Victim 7 tells Carter, on or about July 23, 2014, that she is seventeen (17) years of age. Given the date, however, Victim 7 was sixteen (16) years of age at the time. Carter asked Victim 7 to send him nude pictures of her. Victim 7, on or about July 24, 2014, sent numerous images to Carter; in these images, Victim 7 is either in her underwear, partially nude, or fully nude. Many of the images depict Victim 7's breasts and buttocks. At least four of the images depict her genitals, including her vagina; one of these images shows Victim 7 masturbating. Furthermore, many of the images depict Victim 7's face and/or distinctive tattoos which confirm identification.

34.    Victim 7 and Carter also engaged in a Facebook Messenger conversation on or about November 25, 2014. During the conversation, Victim 7 told Carter that she was in school. Carter asks Victim 7, "Could you make some [videos] in the bathroom at school

soon?" Carter and Victim 7 exchange Snapchat information and Carter indicated that he would pay Victim 7 for the videos. Carter specifically asked Victim 7, "[c]an you get naked . . . on the toilet" at the school, and in describing what he wanted to see in the videos said "[c]an u spread ur legs open and rub it?" A forensic examination of the computer and devices seized from Carter's residence uncovered approximately four (4) Snapchat videos sent by Victim 7 to Carter on or about November 25, 2014. In these videos, Victim 7 sat on a toilet, exposed her vagina, and masturbates. Victim 7 was 16 years of age at the time these videos were sent.

## VICTIM 8

35.   On August 11, 2016, a forensic interview was conducted at the Murray State University Police Department with Victim 8. During the interview, Victim 8 stated that she had been in contact with several people on the internet who were "creepy." She thought she was in a relationship with Adam Bryan, later determined to be Jeffrey Carter, when she was a freshman in high school but the texts between the two were on a prior cellphone. Victim 8 met him through Facebook but did not remember any of her friends who were also friends with him on Facebook. Carter offered Victim 8 $100 to send nude pictures and videos and said that he would drop off the money in her mailbox. Carter requested specific pictures and Victim 8 sent at least one pornographic image of herself to him. The photographs were taken at her parents' house, located in Tennessee, in her bedroom with her Razor cell phone. Victim 8 sent the photograph(s) to Carter because she thought that

16

it was normal for girls her age to send pictures to their boyfriends. Victim 8 did not recognize Carter's photograph and believed the person she was dating, Adam Bryan, was approximately 19 years old. Victim 8 did not remember exchanging pictures of nude genitals with Adam Bryan but later told Agents that she did not get any photographs off of the internet, all of the photos she sent were photographs of herself. A forensic review of Carter's computers and devices, seized during execution of the search warrant, uncovered photographs of Victim 8. One picture depicted a close up image of her vagina, while others were of Victim 8 partially nude (displaying her naked breasts while wearing underwear) or wearing lingerie.

36. The photographs sent by Victim 8 to Carter, including the image of her vagina, were sent via Facebook Messenger on or about July 22, 2014. Victim 8 was fifteen (15) years of age at that time.

### VICTIM 9

37. On August 9, 2016, a forensic interview was conducted at the Purchase Area Sexual Assault and Child Advocacy Center with Victim 9. During the interview, Victim 9 stated that she had sent photographs of herself to past boyfriends but not to people she didn't know. Victim 9 did not recognize the name Jeffrey Carter or Adam Bryan as someone she may have talked with. Victim 9 was shown conversations between herself and Carter in July of 2013 and May of 2014. Victim 9 did not specifically remember the conversations, although she did recognize her phone number. She remembered being

previously contacted by older men who would offer clothes or money for photographs. However, no one ever sent her gifts or money.

38.    During online conversations, Carter sent directions to Victim 9 on the types of pictures he wanted her to send, to include a photograph or video of Victim 9 holding a piece of paper that said she was 14 years old. Victim 9 frequently denied his requests and did not follow his directions. On one occasion, Carter called Victim 9 and complained that she was not doing what he wanted.  Victim 9 responded that she didn't have to do what he said.

39.    Victim 9 blocked Carter once she realized that he was much older and talking to other girls her age. One of Victim 9's friends had posted a picture of Carter on Facebook. This picture was similar to the driver's license picture that was shown to Victim 9 during the interview.  Carter offered $100 to Victim 9 to send him nude photographs. Victim 9 sent photographs to Carter and gave him her address to send the money. Victim 9 never received money from Carter but she does remember Carter sending a picture of abs and a penis to her. She also remembered that Carter had said he was from Texas and in the military. Through forensic review of Carter's computers and devices, seized during the search of his residence, pornographic images and videos of Victim 9 appear on Carter's computers and devices.  These images and videos depict the lascivious exhibition of Victim 9's vagina as well as masturbation.

40.    Victim 9 is depicted in a series of 18 videos, recorded on or about July 22, 2013, located after forensic examination of the computer and devices seized from the defendant during the execution of the search warrant.  These videos appear, based on the background and

18

setting, to have been recorded in the bedroom at the Victim's residence (in McCracken County, Kentucky), using a cellular phone, computer or other device. The videos depict Victim 9 nude or partially nude while she masturbates, using her fingers and a hairbrush. In one of the videos she says "Goodnight daddy." In another of the videos, she sucks on a hairbrush before inserting it in her vagina. In addition, the examination of the computer and devices from this date also show two videos purportedly sent by Carter, and recorded in the bedroom of his residence in Calloway County, Kentucky, to Victim 9, in which he masturbates (and eventually ejaculates) while fully nude and says Victim 9's first name. In these recordings, Carter tells her "I want to fuck your brains out." Victim 9 was approximately 14 years old when these videos were recorded in July of 2013.

41.    Victim 9 is depicted in a series of 18 videos, recorded on or about and between August 19, 2013 and August 31, 2013, located after forensic examination of the computer and devices seized from the defendant during the execution of the search warrant. These videos appear, based off the background and setting, to have been recorded in the bedroom at the Victim's residence, using a cellular phone, computer or other device. The videos depict the lascivious exhibition of Victim 9's vagina as well as masturbation. Victim 9 was approximately 14 years old when these videos were recorded in August of 2013.

42.    Victim 9 is depicted in a video, recorded on or about September 25, 2013, located after forensic examination of the computer and devices seized from the defendant during the execution of the search warrant. This video appears, based off the background and setting, to have been recorded in the bedroom at the Victim's residence, using a cellular

19

phone, computer or other device. The videos depict the lascivious exhibition of Victim 9's vagina as well as masturbation. Victim 9 was approximately 14 years old when the video was recorded in September of 2013.

43.    The two videos sent by Victim 9 to Carter on or about December 5, 2013. These videos depict her fully nude and exposing her buttocks and vagina to the recording device. These videos depict Victim 9 masturbating and displaying her genitalia to the recording device. These videos were located on the computer and devices seized from Carter's residence. In addition, the examination of the computers and devices from this date also show four videos purportedly sent by Carter and recorded in his bedroom, to Victim 9, in which he masturbates (and eventually ejaculates) while fully nude and says Victim 9's first name. In these recordings, Carter also requests that Victim 9 "spread those ass cheeks," as well as telling her "I want to fuck you."

44.    The images and videos, referenced above, from Victim 9 were recorded and sent to Carter on or about and between the months of July of 2013 and December 2013. Victim 9 was approximately 14 years of age during the time period relevant to this Affidavit, from July of 2013 to December of 2013. These images and videos all appear, based on the background and setting, to have been recorded and sent to Carter by Victim 9 from her residence in McCracken County, Kentucky.

### VICTIM 10

45.    On August 9, 2016, a forensic interview was conducted at the Purchase Area Sexual Assault and Child Advocacy Center with Victim 10. During the interview, Victim 10

stated that she had sent nude photographs of herself to a past boyfriend but did not remember sending photographs or videos to anyone else. Victim 10 did not recognize the names Jeffrey Carter or Adam Bryan. Through forensic review of Carter's computer and devices, seized during the search of his residence, photos of Victim 10 appear on Carter's computer. At least two pictures are nude images of Victim 10 which depict the lascivious display of Victim 10's genitals. Specifically, the images show Victim 10 in a bathroom taking her own picture with what appears to be a cellular telephone; one image depicts Victim 10's naked vagina and breasts in a mirror, while another image is a close up shot of Victim 10's vagina. These images were also located during the forensic examination of Carter's black iPhone seized during the search of his residence. These images were sent by Victim 10 to Carter on or about October 26, 2013. Victim 10 was 14 years of age at that time.

**VICTIM 11**

46.    On August 10, 2016, a forensic interview was conducted at the Purchase Area Sexual Assault and Child Advocacy Center with Victim 11. During the interview, Victim 11 stated that she had sent nude photographs and video of herself to a man that she met on the internet, Adam Bryan, later identified as Jeffrey Carter. Victim 11 recognized the name Adam Bryan from Facebook messages. She also communicated with Carter through Snapchat. Adam Bryan messaged Victim 11 on Facebook, asking her if she wanted a job for $45 an hour sending pictures of herself. Victim 11 needed the money and agreed to send pictures and video of herself. Adam Bryan asked her to send pictures with a hairbrush and in the shower in her bathroom. Victim 11 believed Bryan was

approximately 22 years old from the photographs on his Facebook page. He was also friends with some of her friends and school mates. Adam Bryan had promised to give her $500 for the video which she sent through Snapchat on her old account. Victim 11 was approximately 14 or 15 years old at the time she sent the pictures and video. Adam Bryan was mad at her because she was covering herself up in some of the pictures.

47.    The same man sent a Snapchat of himself from a Snapchat account name of Jeffrey Carter, at a school near her house where he was waiting to meet her to pay her. Victim 11 showed up at the school and did not see him or receive any money from him. She stopped talking to him and believes he blocked her on Facebook.

48.    Through forensic examination of Carter's computer and devices, seized during the search of his residence, photos and videos of Victim 11 appear on Carter's computer. The images and videos of Victim 11 depict her fully nude while in the shower and in her bathroom, from her residence located in McCracken County, Kentucky. Approximately six (6) videos sent by Victim 11 to Carter depict her lasciviously exhibiting her vagina and at least one depicts Victim 11 masturbating. These images/videos appear to have been sent to Carter by Victim 11 via Snapchat on or about December 16, 2014. As stated previously, Victim 11 was approximately 14 or 15 years of age at the time these videos were sent.

## VICTIM 12

49.    On August 10, 2016, a forensic interview was conducted at the Purchase Area Sexual Assault and Child Advocacy Center with Victim 12. During the interview, Victim 12

22

stated that she had been in contact with Jeffrey Carter. Initially, Carter contacted Victim
12 through Facebook, with an account in the name of J. Desmond Carter, and offered to
buy her clothes and other items. He also wanted her to recruit friends who would also
take photos and videos. Shortly after he contacted her for the first time, Carter, driving a
green two door Honda, picked up Victim 12 and a friend of hers (Minor 13) to go
shopping at the mall in Paducah, Kentucky. Carter bought them clothes, perfume,
jewelry, and cigarettes. Carter also bought Victim 12 and Minor 13 cell phones in order
to contact him. Carter contacted both of the girls through the phones he gave them.
Victim 12 did not send Carter videos on the cell phone but Carter took pictures and
videos of the girls when he saw them. At the time of the first shopping trip, Victim 12
was 14 years old and attended middle school. During the shopping trip he took photos
and videos of them. Carter told Victim 12 that he was in the Army and wanted her to call
him Sergeant Carter. Victim 12 was also aware that Carter lived in Murray, Kentucky.
Minor 13 moved out of the area during middle school. Carter took Victim 12 and Minor
13 to the mall on two occasions and gave them money to shop on other occasions,
stopping at an ATM once.

50.    Several days later, while Victim 12 was still 14 years old, Carter drove victim 12 to a
hotel in Marshall County, Kentucky and wanted to have sexual intercourse with her.
Victim 12 refused but engaged in oral sex with Carter and let him touch her "wherever he
wanted" for a period of two hours. During the encounter, Carter wanted to take videos of
Victim 12 asking her to say how old she was, as well as her name and that she wanted
him to touch her. The videos were recorded using Carter's cellphone and a white flip

23

cam. Carter then gave Victim 12 $200 cash.  Carter would contact Victim 12 by phone call or messages on Facebook messenger to arrange meetings. He would ask if they could meet and where he could pick her up. Carter would usually pick Victim 12 up at a gas station or a McDonald's.

51.     On another occasion, Carter took Victim 12 to a hotel in Marshall County, Kentucky, and wanted to receive oral sex from her. He also requested that she touch his penis as he groped her breasts for approximately two hours. Victim 12 refused to have sexual intercourse with Carter. After this meeting, Carter sent $200 to Victim 12's P.O. Box.

52.     On another occasion (distinct from those occasions described in paragraphs 50 and 51), Carter picked up Victim 12 at a McDonalds, where she had been dropped off by a friend, and drove her to a Day's Inn hotel in Marshall County, Kentucky. Victim 12 was 17 years old, and Carter asked her to dress up in Lingerie. Victim 12 brought pink lingerie with cheetah print with her to the hotel and changed into it. Carter requested that she dance around while he took pictures of her. She does not remember this meeting being video recorded by Carter. He offered her $600 cash and said he wanted to have sexual intercourse with her. Carter and Victim 12 engaged in oral sex and sexual intercourse. Carter then drove to a nearby ATM and gave Victim 12 $600 cash. When shown still images of the videos located from the computer and devices seized from Carter's residence, Victim 12 identified pictures of herself with Carter from the hotel where they had sexual intercourse. She identified the room that she was in and that she was touching him. Victim 12 later spent the night in the hotel room without Carter.

53.     This meeting (described in paragraph 52) between Carter and Victim 12 was recorded and approximately eight videos were located during forensic examination of the computer and devices belonging to Carter that had been seized during the search warrant previously referenced. These videos depict Victim 12 completely naked engaging in various sex acts with Carter. Victim 12's vagina is clearly depicted in these videos. Additionally, the videos depict Carter performing oral sex on Victim 12, Victim 12 performing oral sex on Carter, Victim 12 masturbating Carter's penis, and Carter and Victim 12 engaging in genital to genital sexual intercourse. These videos were recorded on or about June 28, 2013.

**54.**     Forensic examination of the computer and devices seized from Carter's residence also located a video, recorded on or about September 15, 2013, in which Victim 12, while naked, masturbates Carter's penis. This video, based off the background and setting, appears to have been recorded in a hotel room. Carter is shown, completely naked, setting up a recording device; once he has arranged the device he tells Victim 12 to "go ahead." Victim 12 was seventeen (17) years of age at the time of the recording.

## CONCLUSION

Based on the foregoing information, I respectfully submit that there is probable cause to believe that:

1.  On or about January 11, 2015, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 1) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, and that such visual depictions were actually transported or transmitted using any means or facility of

25

interstate or foreign commerce or in and affecting interstate or foreign commerce, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

2. On or about June 19 and 20, 2013, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 2) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

3. On or about October 16, 2013, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 2) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

4. On or about September 6, 2014, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 2) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

5. On or about March 6, 2013, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 3) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

6. On or about May 3, 2013, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 3) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

7. On or about June 19 and 20, 2013, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced,

enticed, and coerced a minor (Victim 3) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

8. On or about September 10, 2013, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 3) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

9. In or about and between September 17, 2013 and September 20, 2013, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 3) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

10. On or about October 22, 2013, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 3) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, and that such visual depictions were actually transported or transmitted using any means or facility of interstate or foreign commerce or in and affecting interstate or foreign commerce, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

11. On or about June 19 and 20, 2013, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 4) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

12. On or about November 30, 2014, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 5) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed,

shipped, and transported in interstate and foreign commerce by any means, and that such visual depictions were actually transported or transmitted using any means or facility of interstate or foreign commerce or in and affecting interstate or foreign commerce, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

13. In or about and between February 1, 2013 and February 28, 2013, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 6) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, and that such visual depictions were actually transported or transmitted using any means or facility of interstate or foreign commerce or in and affecting interstate or foreign commerce, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

14. In or about and between November 4, 2014 and November 29, 2014, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 6) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, and that such visual depictions were actually transported or transmitted using any means or facility of interstate or foreign commerce or in and affecting interstate or foreign commerce, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

15. In or about and between December 10, 2014 and December 13, 2014, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 6) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, and that such visual depictions were actually transported or transmitted using any means or facility of interstate or foreign commerce or in and affecting interstate or foreign commerce, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

16. On or about July 24, 2014, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 7) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, and that such visual depictions were actually transported or transmitted using any means or facility of interstate or foreign commerce or in and affecting interstate or foreign commerce, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

28

17. In or about and between November 24, 2014 and November 25, 2014, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 7) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, and that such visual depictions were actually transported or transmitted using any means or facility of interstate or foreign commerce or in and affecting interstate or foreign commerce, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

18. On or about July 22, 2014, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 8) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, and that such visual depictions were actually transported or transmitted using any means or facility of interstate or foreign commerce or in and affecting interstate or foreign commerce, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

19. In or about and between July 21, 2013 and July 31, 2013, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 9) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, and that such visual depictions were actually transported or transmitted using any means or facility of interstate or foreign commerce or in and affecting interstate or foreign commerce, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

20. In or about and between August 19, 2013 and August 31, 2013, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 9) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, and that such visual depictions were actually transported or transmitted using any means or facility of interstate or foreign commerce or in and affecting interstate or foreign commerce, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

21. On or about September 25, 2013, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 9) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed,

shipped, and transported in interstate and foreign commerce by any means, and that such visual depictions were actually transported or transmitted using any means or facility of interstate or foreign commerce or in and affecting interstate or foreign commerce, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

22. On or about December 5, 2013, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 9) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, and that such visual depictions were actually transported or transmitted using any means or facility of interstate or foreign commerce or in and affecting interstate or foreign commerce, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

23. On or about October 26, 2013, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly received material that contained child pornography (Victim 10) that had been mailed, and using any means and facility of interstate and foreign commerce shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, in violation of 18 U.S.C. §§ 2252A(a)(2)(B) and (b)(1);

24. On or about December 16, 2014, in the Western District of Kentucky, Calloway County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 11) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, and that such visual depictions were actually transported or transmitted using any means or facility of interstate or foreign commerce or in and affecting interstate or foreign commerce, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

25. On or about June 28, 2013, in the Western District of Kentucky, Marshall County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 12) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, in violation of 18 U.S.C. §§ 2251(a) and 2251(e);

26. On or about June 28, 2013, in the Western District of Kentucky, Marshall County, Kentucky, Jeffrey Desmond Carter knowingly recruited, enticed, harbored, transported, provided or obtained a person (Victim 12) that defendant knew was less than eighteen years old and would be caused to engage in a commercial sex act, in and affecting interstate and foreign commerce, in violation of 18 U.S.C. § 1591(a); and

27. On or about September 15, 2013, in the Western District of Kentucky, Marshall County, Kentucky, Jeffrey Desmond Carter knowingly used, persuaded, induced, enticed, and coerced a minor (Victim 12) to engage in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256(2)(A) for the purpose of producing visual depictions of such conduct, which were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, in violation of 18 U.S.C. §§ 2251(a) and 2251(e).


                                           VIRGINIA MACHENRY
                                           Federal Bureau of Investigation

SUBSCRIBED and SWORN before me this 6th day of October, 2016.


COLIN H. LINDSAY
United States Magistrate Judge


JEK:SAH

31